ORIGINAL

# In the United States Court of Federal Claims

No. 14-288T

(Filed: February 13, 2015)

FILED
FEB 13 2015
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| **********************************<br><br>JAMES P AND BEATRIZ N. DUFFY,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant.<br><br>********************************** | Claim for refund of income tax paid on proceeds of a settlement agreement; "origin of the claim" doctrine; inapplicability of exclusion from taxation under I.R.C. § 104(a)(2); proceeds taxable as ordinary income and not capital gains |

James P. Duffy and Beatriz N. Duffy, *pro se*, Walnut Creek, California.

Carl D. Wasserman, Trial Attorney, Commercial Litigation Branch, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tamara W. Ashford, Acting Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C. Of counsel was Mary M. Abate, Assistant Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this tax-refund case, plaintiffs James P. and Beatriz N. Duffy (collectively, "the Duffys") seek a refund of $13,049 in income taxes allegedly overpaid for tax year 2007. Am. Compl. ¶ 1, ECF No. 3. In their complaint, the Duffys maintain that the proceeds of an agreement entered by Mr. Duffy to settle a claim he had made were not taxable pursuant to 26 U.S.C. ("I.R.C.") § 104(a)(2) because payment was on account of Mr. Duffy's "physical injury or physical sickness." Am. Compl. ¶ 135. In the alternative, the Duffys aver that the proceeds were not taxable as ordinary income, but rather were taxable as capital gains meant to restore impaired goodwill. Am. Compl. ¶¶ 119, 125. Pending before the court is the government's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Mot. to Dismiss of United



States ("Def.'s Mot."), ECF No. 7; see Hr'g Tr. at 8:19-22 (Jan. 27, 2015).[1] For the reasons stated, the court converts the government's motion to dismiss under RCFC 12(b)(6) into a motion for summary judgment under RCFC 56 and concludes that the government is entitled to judgment as a matter of law on the Duffys' tax refund claim.

## BACKGROUND

In 2004, Mr. Duffy maintained a private consulting business. Am. Compl. ¶ 6. He worked with the United Commercial Bank ("UCB" or "the Bank") in San Francisco, California, and then became Tax Director and First Vice President of the Bank. Id. While working at UCB, Mr. Duffy was responsible for ensuring that all accounting policies and procedures within his department complied with the Public Company Accounting Reform and Investor Protection Act of 2002 ("Sarbanes-Oxley Act"), Pub. L. 107–204, 116 Stat. 745. Am. Compl. ¶ 17, Ex. B.[2] To that end, he "had the opportunity to observe UCB's compliance with various legal, accounting, and financial procedures and . . . participated in many significant decisions affecting UCB's financial statements." Am. Compl. ¶ 17. In 2006, Mr. Duffy witnessed an action at UCB that was allegedly fraudulent and not in compliance with the Sarbanes-Oxley Act. Am. Compl. ¶ 18. He subsequently reported the incident to management at UCB, including the Chief Financial Officer, the Controller, and the Sarbanes-Oxley Director. Am. Compl. ¶¶ 18-19, 22.[3] Mr. Duffy was placed on administrative leave shortly thereafter. Am. Compl. at Ex. D. On November 9, 2006, UCB terminated his employment contract. Am. Compl. ¶¶ 70-71, Ex. H.

---

[1] Further citations to the transcript of the hearing held on January 27, 2015 will omit a reference to the date.

[2] In the wake of the collapse of Enron Corporation, Congress enacted the Sarbanes-Oxley Act. See S. Rep. No. 107-146, at 1 (2002). Its purpose is "[t]o protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws . . . ." Id.

[3] Mr. Duffy was convinced that a particular tax adjustment, suggested by Deloitte Touche Tohmatsu Limited ("D&T"), violated Generally Accepted Accounting Principles. See Am. Compl. ¶¶ 22-23. Although this adjustment "would have increased cash flow [at UCB] and resulted in a large benefit to the books," Am. Compl. ¶ 24, it "was possibly fraud," see Am. Compl. ¶ 48. According to Mr. Duffy, UCB management nevertheless booked the D&T adjustment in contravention of the Sarbanes-Oxley Act. See Am. Compl. ¶¶ 53, 57-58.

In 2008, UCB's parent company, UCBH Holdings, Inc. ("UCBH"), received roughly $298 million in bailout funds from the United States Treasury's Troubled Asset Relief Program ("TARP"). Am. Compl. ¶ 96. Approximately one year later, the Bank collapsed and was taken over by the Federal Deposit Insurance Corporation. See Am. Compl. ¶ 96, Ex. K. "The primary reason for UCB's failure was inadequate oversight by the Board of Directors . . . and management . . . . [V]arious UCB officials misrepresented or omitted relevant loan performance data, altered documents to improve the perception of loan quality, and made other misrepresentations that impacted UCBH's financial statements." Am. Compl. at Ex. K. UCBH was the first recipient of TARP funds to fail, and taxpayers lost their entire $298 million investment. See Hr'g Tr. 31:18 to 32:17.

2

As a result, Mr. Duffy filed a claim against the Bank on February 2, 2007 with the Department of Labor alleging employment discrimination in violation of 18 U.S.C. §1514(a).[4] Am. Compl. at Ex. D. Mr. Duffy maintained that "UCB terminated his employment because of his participation in an activity protected by the Sarbanes-Oxley Act, and that UCB retaliated against him to punish him for his refusal to participate in the unethical and illegal conduct of UCB." Am. Compl. ¶ 61. UCB filed an objection to Mr. Duffy's complaint on or about April 5, 2007. Am. Compl. at Ex. D.[5] Following his departure from UCB, Mr. Duffy pursued other employment opportunities and attempted to expand his consulting practice, *see* Am. Compl. ¶¶ 73-74, but was not successful in these endeavors because "[potential employers and clients] required a reference from UCB[,] which was not possible," Am. Compl. ¶¶ 76-78. During this time, Mr. Duffy reportedly suffered stress and anxiety from the Sarbanes-Oxley retaliation, Hr'g Tr. 21:8-10, which allegedly "affects him even today," Am. Compl. ¶ 106.

A few days before an Administrative Law Judge was scheduled to hear Mr. Duffy's case against UCB, Mr. Duffy entered into a "Settlement Agreement and General Release" resolving all claims against the Bank. Am. Compl. ¶ 80, Ex. I ("Settlement Agreement").[6] The Settlement Agreement was a "full and complete arrangement for the permanent termination of [Mr.] Duffy's employment relationship with [UCB]," Settlement Agreement ¶ 4, and specified that

> [UCB] has entered into this Agreement for the *exclusive purpose of avoiding the expense and inconvenience of further litigation*. This Agreement shall not be deemed, at any time or in any forum, as an admission by any person or entity released by this Agreement of liability to, or the validity of any claim, by [Mr.] Duffy.

---

[4]The whistleblower provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514(a), was enacted to combat and thwart a corporate climate "that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities, such as the [Federal Bureau of Investigation] and the [United States Securities and Exchange Commission], but even internally." S. Rep. No. 107-146, at 5 (2002). Accordingly, Section 1514(a) "protects [whistleblowers] when they take lawful acts to disclose information or otherwise assist criminal investigators, federal regulators, Congress, supervisors (or other proper people within a corporation), or parties in a judicial proceeding in detecting and stopping fraud." *Id.* at 13. If an employer does take retaliatory action against the whistleblower, "[S]ubsection (b) [of Section 1514] allows the employee to file a complaint with the Department of Labor . . . ." *Id.*

[5]The complaint was dismissed in May 2005 on timeliness grounds. *See* Pls.' Reply [*sic*] to Def.'s Mot. to Dismiss ("Pls.' Opp'n") at 4, ECF No. 10. Mr. Duffy objected to that decision and sought reinstatement of his claim. *See* Am. Compl. at Ex. D. According to the Duffys, "this reinstatement issue was resolved in favor of [Mr. Duffy]" and the case against UCB "was then scheduled for a hearing on its merits for review on October[] 15, 2007." *Id.*

[6]Mr. Duffy contends that "had [he] not been under such unbearable emotional distress and been of right mind [when considering settlement], and had he not had such poor legal assistance, UCB would have been found guilty of fraud." Am. Compl. ¶ 81.

3

*Id.* ¶ 8 (emphasis added). Under the terms of the settlement, UCB agreed to pay a total sum of $75,000, with $50,000 being awarded to Mr. Duffy and $25,000 being paid to his attorneys at the Popelka Law Group, A.P.C. *Id.* ¶¶ 1.1-1.2. According to the Settlement Agreement, Mr. Duffy was to immediately withdraw all claims against UCB currently pending before the Department of Labor, thus allowing the Secretary of Labor to enter a final order dismissing those claims with prejudice. *Id.* ¶ 5. Mr. Duffy also consented to the following stipulation:

> [UCB] and its counsel have made no representations or warranties concerning the tax treatment or characterization of the consideration for this Agreement. [Mr.] Duffy is solely responsible for any tax liabilities occasioned by [UCB]'s payment of the consideration for this Agreement.

*Id.* ¶ 7. An Administrative Law Judge reviewed the terms of the proposed agreement and approved the Settlement Agreement on October 23, 2007. *See* Def.'s Mot. at Ex. 6 ("I find the terms of the agreement to be fair and reasonable and adequately protect Mr. Duffy.").

Thereafter, the Duffys filed a Form 1040 (U.S. Individual Income Tax Return) for 2007, acknowledging the receipt of $50,000 from a "lawsuit" and entering that sum as "other taxable income." Def.'s Mot at Ex. 8.[7] The Duffys also included Schedule D (Capital Gains and Losses) with their income tax return, in which they reported long-term capital losses, but no capital gains. *Id.* On December 1, 2008, the Duffys were issued a tax refund in the amount of $1,500 from the U.S. Department of the Treasury, Internal Revenue Service ("IRS"). *Id.* at Ex. 7. The Duffys proceeded to file a Form 1040X (Amended U.S. Individual Income Tax Return) on April 15, 2011 requesting a refund in the amount of $13,049 to be credited to their 2007 tax liability. *Id.* at Ex. 9. The amended return stated that the inclusion of $50,000 as income in the

---

[7] The Duffys did not include the $25,000 paid to the Popelka Law Group on their tax return. Def.'s Mot. at Ex. 8. The government maintains that "[t]he $25,000 was properly taxable as income to the Duffys as paid to their attorneys for their benefit." *Id.* at 5 n.5. Because the statute of limitations on assessments and collections has expired, *see* I.R.C. § 6501, it is not necessary for the court to reach a decision as to whether the Duffys should have reported the $25,000 as taxable income, *see* Def.'s Mot. at 5 n.5 (conceding that the government cannot counterclaim for the unreported settlement proceeds from 2007), *see also* Reply Br. of the United States in Support of its Mot. to Dismiss ("Def.'s Reply") at 1 n.1, ECF No. 13 ("[T]he government does not seek recovery of taxes related to the $25,000 portion of that amount that plaintiffs directed to be paid to their attorney as legal fees and excluded from income on their return.").

In all events, the Duffys contend that the America Jobs Creation Act of 2004, Pub. L. No. 108-357, tit. VII, § 703(a), (b), 118 Stat. 1546, 1547, "amended the Internal Revenue Code to allow a taxpayer to deduct from gross income attorney's fees and court costs paid by, or on behalf of, the taxpayer in connection with a claim of unlawful discrimination or retaliation for a protected activity." Pls.' Opp'n at 6 (citing I.R.C. § 62(a)(20), (e)). The Duffys aver that the claim based on Sarbanes-Oxley was a protested activity. *Id.*

4

## STANDARDS FOR DECISION

### A. Jurisdiction

The Tucker Act, 28 U.S.C. § 1346(a)(1), grants this court jurisdiction to consider federal tax refund claims. *Smith v. United States*, 495 Fed. Appx. 44, 48 (Fed. Cir. 2012); *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002); *McCann v. United States*, 105 Fed. Cl. 120, 122 (2012), *aff'd*, 2012 WL 6839761 (Fed. Cir. Nov. 27, 2012); *see also* I.R.C. § 7422(e), (i), (j) (referring to the concurrent jurisdiction of this court under the Tucker Act and the district courts under 28 U.S.C. § 1346(a)(1), to consider suits for tax refunds). As a party seeking redress in this court, the taxpayer has the burden of establishing that jurisdiction exists by a preponderance of the evidence. *McCann*, 105 Fed. Cl. at 122; *see also Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). To maintain a tax-refund suit in this court, the taxpayer must first pay the assessed tax in full, *Ledford*, 297 F.3d at 1382, and file an administrative claim for a tax refund with the IRS that complies with all regulations, *see* I.R.C. § 7422(a). "[A] regulation requires the refund claim to "detail each claimed ground for a refund, and provide sufficient facts to apprise the IRS of its basis." *Cearley v. United States*, __ Fed. Cl. __, __, 2014 WL 6942389, at *2 (Fed. Cl. Dec. 8, 2014) (quoting *Chicago Milwaukee Corp. v. United States*, 40 F.3d 373, 375 (Fed. Cir. 1994) (in turn citing Treas. Reg. § 301.6402-2(b)(1))). If the IRS denies the claim, the taxpayer must generally file suit in this court within two years after the denial, *see* I.R.C. § 6532(a)(1), and then may only raise those arguments that were previously set forth in the administrative claim to the IRS. *Lockheed Martin*, 210 F.3d at 1371; *see also Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983) ("Together, [I.R.C. § 7422(a)] and [Treas. Reg. § 301.6402-2(b)(1)] preclude a taxpayer-plaintiff from substantially varying at trial the factual bases of its arguments from those raised in the refund claims it presented to the IRS."). If these requirements are met, the court may adjudicate the tax refund claim.

### B. Conversion of a Motion under Rule 12(b)(6) to One under Rule 12(d)

A motion under RCFC 12(b)(6) is addressed on the pleadings. A claim for relief stated in the pleadings must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Additionally, the facts alleged must "'plausibly suggest[] (not merely [be] consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). While the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 545, it must put forward more than "'naked assertion[s] devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (alteration in original), or "the-defendant-unlawfully-harmed-me-accusation[s]," *id.* (citing

---

opposition, the government conceded that the "goodwill/capital gains argument was raised and considered [by the IRS]," Def.'s Reply at 2-3, and withdrew its variance argument "for purposes of this motion to dismiss only," *id.* at 3; *see also* Hr'g Tr. 8:16-22.

*Twombly*, 550 U.S. at 555). When evaluating a motion to dismiss under RCFC 12(b)(6) and deciding whether a claimed right to relief is plausible—not merely possible—the court must "draw on its judicial experience and common sense." *Id.* at 679. In that connection, the court "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

If the parties present matters outside the pleadings on a motion to dismiss under RCFC 12(b)(6), the court has discretion to consider those materials. *Easter v. United States*, 575 F.3d 1332, 1335 (Fed. Cir. 2009) (citing *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38-39 (1st Cir. 2004); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1371, at 273 (3d ed. 2004)); *see also Forbes v. United States*, 84 Fed. Cl. 319, 321 (2008), *aff'd*, 333 Fed. Appx. 573 (Fed. Cir. 2009).[9] When the court takes cognizance of matter not encompassed by the pleadings, RCFC 12(d) requires the motion to dismiss to be treated as one for summary judgment under RCFC 56. RCFC 12(d); *see also Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014). Correlatively, before the court may convert a motion dismiss into a motion for summary judgment, the parties must be put on notice of the conversion in accord with RCFC 12(d). *Martin v. United States*, 96 Fed. Cl. 627, 629 (2011) (citing *Akins v. United States*, 82 Fed. Cl. 619, 622 (2008)). RCFC 12(d) provides in pertinent part:

> If, on a motion under RCFC 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56. *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.*

RCFC 12(d) (emphasis added); *see also Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993) ("The notice requirement of RCFC 12(b) [recodified as RCFC 12(d)] offers the parties a full opportunity to prepare for and comply with the requirements of Rule 56.") (citing *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1322 (Fed. Cir. 1983)). However, when "it is the non-moving party that introduces extra-pleading matter, that party is deemed to be on constructive notice that the court may convert the motion into a motion for summary judgment." *Easter*, 575 F.3d at 1335-36; *cf. Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) ("The essential inquiry is whether the [non-movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings.").

As noted in the recitation of background facts, the court has received documents from the Duffys, including the second amended tax return, which amplify and extend the allegations contained in the pleadings. *See* Pls.' Opp'n at Ex. 2-6. In turn, the government has relied

---

[9]In general, RCFC 12 mirrors Fed. R. Civ. P. 12, *see* RCFC 12, Rules Committee note, 2002 revision, and cases from federal courts applying Fed. R. Civ. P. 12 are typically persuasive in this court, *see Palafox St. Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 780 n.2 (2014).

extensively on the newly provided materials for its arguments. *See* Def.'s Reply at 2-4. Additionally, the court has taken account of the added exhibits in constructing the factual background of this case and cannot accurately address the merits without resort to these materials. *See* Hr'g Tr. 9:21-10:9. The court's consideration of these extra-pleading matters, therefore, requires conversion of the government's motion to dismiss into one for summary judgment under RCFC 56. *See* RCFC 12(d); *compare Easter*, 575 F.3d at 1335-37 (accepting a conversion which had been discussed with the parties), *with Toon v. United States*, 96 Fed. Cl. 288, 299 (2010) (declining to convert a motion to dismiss into a summary judgment motion when "the exhibits submitted by the parties clarify, rather than add anything new to, the allegations in the complaint."). In this instance, the court gave notice at the hearing held on January 27, 2015, that it had received documents from the parties apart from the pleadings, and as a result, the government's motion "[wa]s really turning into a summary judgment motion." Hr'g Tr. 10:2-3. The government concurred with the conversion, Hr'g Tr. 10:4-9, and, subsequently, after the hearing, the Duffys submitted a supplemental post-hearing brief addressing factual points. *See* Pls.' Notice on Hearing for Def.'s Mot. to Dismiss ("Pls.' Post Hearing Br."), ECF No 20. Consequently, the strictures of RCFC 12(d) for conversion of the government's motion to dismiss into one for summary judgment have been satisfied.

### C. Summary Judgment

Summary judgment may be granted when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." *Id.* at 250. The movant has the burden of demonstrating the absence of such genuine disputes. Accordingly, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant may defeat summary judgment by coming forward with material facts of its own, more than "[m]ere denials or conclusory statements," indicating "an evidentiary conflict created on the record." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). The court may grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 599 (alteration in original) (citations omitted).

### ANALYSIS

### A. Jurisdiction

This court has the juridical power to adjudicate the Duffys' tax refund claim. The Duffys paid the amount of assessed tax liability in full for tax year 2007, *see* Def.'s Mot. at Ex. 7, and filed a valid claim for a refund with the IRS that contained supporting evidence necessary to prove that claim, *see* Pls.' Opp'n at Ex. 1-2. After the IRS denied their request for a refund, *see* Def.'s Mot. at Ex. 10; *see also* Pls.' Opp'n at Ex. 1, 5-6, the Duffys timely filed a tax refund suit

8

2007 tax return was incorrect because that amount "was not taxable." *Id.* The Duffys subsequently filed a second amended tax return on October 4, 2011 to "explain[] why this income . . . [was] not subject to tax or [could] be offset against the taxpayer[s]' capital loss carry forward." Pls.' Opp'n at Ex. 2. In a statement attached to the second amended return, the Duffys made the following declaration:

> Because of the physical injury and physical sickness that the taxpayer suffered as a result of the conduct of [UCB], [t]he settlement proceeds should be excluded from income taxation pursuant to [I.R.C. §] 104. In the alternative, the settlement proceeds should be treated as capital gain income because of the injury to the taxpayer's business reputation and business goodwill. The decline in value of the taxpayer's business reputation and business goodwill, as a result of the actions of others, should be treated as the disposition of a capital asset.

*Id.* The IRS disallowed the Duffys' request for a refund on April 12, 2012, stating that "[t]he $50,000 non-employee compensation from [UCB] is taxable as originally filed." Def.'s Mot. at Ex. 10; *see also* Pls.' Opp'n at Ex. 5-6.

Just short of two years after the notice of disallowance, on April 11, 2014, the Duffys filed suit in this court, arguing that the IRS erroneously denied their refund claim. An amended complaint was filed on May 2, 2014. In the pleadings, the Duffys presented identical arguments to those raised in the second amended tax return, *i.e.*, that they are entitled to recover a tax refund of $13,049 because the settlement payment of $50,000 was excludable from gross income under I.R.C. § 104(a)(2), or alternatively, was taxable as capital gains for lost goodwill. Compl. at 1; *see also* Am. Compl. at 1. Notably absent from these pleadings was any reference to the second amended tax return or an accompanying attachment of either amended tax return. On July 28, 2014, the government responded with a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). In opposition to the government's motion to dismiss, the Duffys proffered new documents, including the second amended return filed on October 4, 2011. *See* Pls.' Opp'n at Ex. 2. In light of these extra-pleading materials, the government withdrew its claim for lack of subject matter jurisdiction.[8] Following briefing and a hearing, the case is ready for disposition.

---

[8]The government's argument under RCFC 12(b)(1) was predicated on the "substantial variance rule." Def.'s Mot. at 8; *see Yamagata v. United States*, 114 Fed. Cl. 159, 177 (2014) ("[Under] the substantial variance rule . . . a taxpayer is barred from presenting claims in a tax refund suit that substantially vary the factual bases and legal theories that were set forth in the tax refund claim presented to the IRS.") (citing *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1367 (Fed. Cir. 2013); *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000)). Because the Duffys' first amended tax return was devoid of any contention that the settlement proceeds should be treated as capital gains, *see* Def.'s Mot. at Ex. 9, the government maintained that the claim "must be dismissed as at substantial variance with [the Duffys'] claims for refund," *id.* at 8. After the Duffys presented the second amended tax return with their

5

in this court, *see* Compl. at 1; *see also* 26 U.S.C. § 6532(a)(1). The Duffys' complaint does not "'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin*, 210 F.3d at 1371. Rather, as the government concedes, the arguments set forth in the complaint were raised in the second amended tax return and then were considered by the IRS. Def.'s Reply at 2-3; *compare* Pls.' Opp'n at Ex. 2, *with* Am. Compl. ¶¶ 119, 125, 135. Given these circumstances, the Duffys have satisfied the jurisdictional requirements for a tax refund suit in this court. *See Taylor v. United States*, 57 Fed. Cl. 264, 265 (2003) (holding that plaintiff had established subject matter jurisdiction over a tax refund claim where plaintiff fully paid the income tax owed, filed a claim for a refund with the IRS, and timely filed a complaint subsequent to the notice of disallowance).

### B. Summary Judgment

The parties are generally in agreement as to the factual underpinnings of the case. Neither side contests the fact that Mr. Duffy entered into the Settlement Agreement with UCB on October 11, 2007. They also agree that Mr. Duffy was paid $50,000 and his counsel was provided $25,000 in compensation under the terms of the Settlement Agreement. The parties disagree, however, as to the tax treatment of the settlement award. The dispute turns on (1) whether the purpose of the Settlement Agreement was to compensate Mr. Duffy for physical injury or physical sickness; and (2) if the settlement proceeds received by Mr. Duffy were in consideration for the disposition or sale of damaged goodwill. The second issue need only be reached if the first matter is resolved in the government's favor.

The Duffys aver that payment from UCB was exempted from taxation pursuant to I.R.C. § 104(a)(2) because it was the result of "physical injuries inflicted on [Mr. Duffy's] physical health." Pls.' Opp'n at 10. Alternatively, they argue that the settlement proceeds were taxable as capital gains meant to "compensate Mr. Duffy for damages inflicted upon his business and personal goodwill." *See* Pls.' Opp'n at 5; *see also* Hr'g Tr. 25:22-24. In response, the government makes two arguments. First, it contends that "the nature of the claim [Mr. Duffy] filed against [UCB] . . . was *not* 'on account of personal physical injuries or sickness,' as required by [subsection] 104(a)(2), but was simply to settle an employment discrimination claim for wrongful termination under 28 U.S.C.A. § 1514[(a)]." Def.'s Reply at 1-2 (emphasis in original). Second, the government maintains that the settlement proceeds cannot be treated as capital gains because payment was not in consideration for the sale or exchange of any capital asset. *Id.* at 2-3. The court considers each of these arguments in turn.

1. *I.R.C. § 104(a)(2)*.

I.R.C. 61(a) defines "gross income" as "all income from whatever source derived." The broad sweep of this provision demonstrates that Congress intended "to use the full measure of its taxing power." *Helvering v. Clifford*, 309 U.S. 331, 334 (1940); *see also Cinergy Corp. v. United States*, 55 Fed. Cl. 489, 512 (2003). Correlatively, the Duffys, who are claiming the tax exemption, have the burden of establishing their entitlement to a specific exemption in the tax code. *Abrahamsen v. United States*, 228 F.3d 1360, 1362-63 (Fed. Cir. 2000) (citing *United States v. Janis*, 428 U.S. 433, 440-41 (1976); *The Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998)).

The Duffys argue that the proceeds of the Settlement Agreement fall within the terms of I.R.C. § 104(a)(2). That statute provides, in pertinent part:

> (a) In general.— Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, *gross income does not include* . . .
>
> > (2) *the amount of any damages* (other than punitive damages) *received* (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal physical injuries or physical sickness*;

I.R.C. § 104(a) (emphasis added). The Supreme Court has developed two independent tests that a taxpayer must meet before a settlement amount may be excluded from gross income under Section 104(a)(2). *Commissioner v. Schleier*, 515 U.S. 323, 337 (1995); *see also Green v. Commissioner*, 507 F.3d 857, 867 (5th Cir. 2007).[10] "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights;' and second, the taxpayer must show that the damages were received "on account of personal [physical] injuries or [physical] sickness." *Schleier*, 515 U.S. at 337; *see also Green*, 507 F.3d at 867; *Chamberlain ex rel. Chamberlain v. United States*, 401 F.3d 335, 341 (5th Cir. 2005). There is no dispute that the Settlement Agreement "satisfies the requirement that the underlying cause of action is a tort." *See* Def.'s Mot. at 10. The salient question is whether the settlement payment was received "on account of" Mr. Duffy's physical injuries or physical sickness.

The "on account of" phrase requires a direct causal link between the damages and the physical injury or physical sickness; in this respect, "damages [must] be awarded by reason of, or because of, a personal physical injury [or physical sickness]." *Stadnyk*, 367 Fed. Appx. at 593;

---

[10]*Schleier* and *Green* were decided using the tax statute in effect before 1996. *See, e.g.*, *Green*, 507 F.3d at 867 n.6 ("Because the parties agreed . . . that the pre-1996 law governed the taxability of the settlement payments at issue, we will apply that version."). Prior to 1996, I.R.C. § 104(a)(2) had excluded from gross income amounts received in compensation for "personal injuries or sickness," which included physical and non-physical injuries such as emotional distress. *See* I.R.C. § 104(a)(2) (1995). Under the 1996 amendments, money received as compensation not attributable to personal physical injury or physical sickness is now taxable. *See Stadnyk v. Commissioner*, 367 Fed. Appx. 586, 590 (6th Cir. 2010); *see also Murphy v. Internal Revenue Serv.*, 493 F.3d 170, 176 (D.C. Cir. 2007). "While the exclusion has since been narrowed, the holdings of these cases describe the general approach courts should use in determining the tax treatment of damages or settlement proceeds under [Section] 104(a)(2) and remain good law." *Espinoza v. Commissioner*, 636 F.3d 747, 750 (5th Cir. 2011). Accordingly, a taxpayer bears the burden under Section 104(a)(2), as amended, of proving personal *physical* injuries or *physical* sickness. *See Murphy*, 493 F.3d at 174.

*see also Green*, 507 F.3d at 867 (the court must ask "in lieu of what was the . . . settlement awarded?"); *Colorcon, Inc. v. United States*, 110 Fed. Cl. 650, 662 (2013) (applying the "in lieu of" test). "Where damages are received under a written settlement agreement, 'the focus is on the origin and characteristics of the claims settled in determining whether such damages are excludable under § 104(a)(2).'" *Green*, 507 F.3d at 867 (quoting *Pipitone v. United States*, 180 F.3d 859, 862 (7th Cir. 1999)). Therefore, the tax treatment of damages hinges on whether payment was made for the purpose of settling a claim for personal physical injury or physical sickness. *See Greer v. United States*, 207 F.3d 322, 329 (6th Cir. 2000). In considering this "origin of the claim" doctrine, *Bagley v. Commissioner*, 121 F.3d 393 (8th Cir. 1997), *i.e.*, in lieu of what were damages award or paid, *Delaney v. Commissioner*, 99 F.3d 20, 23-24 (quoting *Alexander v. Internal Rev. Serv.*, 72 F.3d 938, 942 (1st Cir. 1995) (in turn quoting *Raytheon Prod. Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir. 1944))), the court first looks to the express language in the settlement for indicia of its purpose. Only if "the settlement agreement lacks express language of purpose, [will] the court look[] beyond the agreement to other evidence that may shed light on the 'intent of the payor as to the purpose in making the payment.'" *Green*, 507 F.3d at 867 (quoting *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965)); *see also Pipitone*, 180 F.3d at 864; *Ray v. United States*, 25 Cl. Ct. 535, 540 (1992), *aff'd*, 989 F.2d 1204 (Fed. Cir. 1993).

The Duffys posit that the general release language in the Settlement Agreement is ambiguous as to the purpose of the payment, and therefore the court should look primarily to the intent of the parties. Pls.' Opp'n at 2. This argument is unavailing because the terms of the settlement agreement unequivocally resolve whether $50,000 in compensation was made "on account of" Mr. Duffy's physical injuries. Paragraph 8 of the Settlement Agreement states that Mr. Duffy was paid for "the *exclusive purpose* of avoiding the expense and inconvenience of further litigation." Agreement ¶ 8 (emphasis added); *cf. Green*, 507 F.3d at 868 (finding that paragraphs four and six in a settlement agreement contain express language of purpose). No language in the Settlement Agreement suggests that the proceeds were for the purpose of settling a claim for physical injury or physical sickness. *See Pipitone*, 180 F.3d at 864 ("The [s]ettlement [a]greement is a general release of all claims and makes no specific reference to whether the payment compensated [the taxpayer] for personal injuries or sickness."); *cf. Abrahamsen*, 228 F.3d at 1363 ("Rather than reflecting an individualized amount for each employee based on the unique individual injuries of that employee, the payments reflected an amount associated with the employee's work record."). "And failure to show the specific amount of the payment allocable to the claims of tort or tortlike damages for personal [physical] injuries results in the entire amount's being presumed not to be excludable." *Wise v. Commissioner*, 75 T.C.M. (CCH) 1514 (T.C. 1998) (citing *Taqqi v. United States*, 35 F.3d 93, 96 (2d Cir. 1994); *Getty v. Commissioner*, 91 T.C. 160, 175-76 (1988), *aff'd on this issue and rev'd on other issues*, 913 F.2d 1486 (9th Cir. 1990)). Accordingly, payment to Mr. Duffy was "completely independent of the existence or extent of any personal [physical] injury." *Schleier*, 515 U.S. at 330.

For the reasons stated, the sum of $50,000 paid to Mr. Duffy pursuant to the Settlement Agreement does not qualify as excludable gross income under I.R.C. § 104(a)(2).

2. *Proceeds from the sale of goodwill.*

Business goodwill, a capital asset under I.R.C. § 1221, is "the expectation of continued patronage." *Baker v. Commissioner*, 338 F.3d 789, 793 (7th Cir. 2003); *see also Des Moines Gas Co. v. City of Des Moines*, 238 U.S. 153, 165 (1915) ("[Goodwill indicates] that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business."). Proceeds from the sale of goodwill are generally taxable as capital gains. *Muskat v. United States*, 554 F.3d 183, 188 (1st Cir. 2009); *see also Patterson v. Commissioner*, 810 F.2d 562, 569 (6th Cir. 1987); *cf.* I.R.C. § 1222 (defining a capital gain as "gain from the sale or exchange of a capital asset"). A sale is "'a transfer of property for a fixed price in money or its equivalent,'" *Schelble v. Commissioner*, 130 F.3d 1388, 1394-95 (10th Cir. 1997) (quoting *Iowa v. McFarland*, 110 U.S. 471, 478 (1885)), resulting from "a contract 'to pass rights of property for money, which the buyer pays or promises to pay to the seller [for the thing bought and sold],'" *id.* (quoting *Williamson v. Berry*, 49 U.S. 495, 496 (1850)); *see also Commissioner v. Brown*, 380 U.S. 563, 571 (1965). The sale of goodwill occurs "only when the business or a part of it, to which the goodwill attaches is sold." *Schelble*, 130 F.3d at 1394; *see also Baker*, 338 F.3d at 793 ("Goodwill cannot be transferred [apart] from the business with which it is connected."); *cf. Davee v. United States*, 444 F.2d 557, 562 (Ct. Cl. 1971) ("A sale entailing goodwill results in capital gain to the seller . . . .").

The Duffys maintain that goodwill exists "with respect to [Mr. Duffy's] consulting firm," Pls.' Sur-reply in Opposition to Defendant's Second Motion to Dismiss ("Pls.' Sur-reply") at 6, 14, ECF No. 16, and that the settlement payment was in consideration for damage inflicted on this goodwill, *see id.* at 13, 23. Because "there was no tax basis in this goodwill," the Duffys contend that the proceeds should be treated as a capital gain. *Id.* at 24. The government does not dispute whether Mr. Duffy owned a goodwill asset. *See* Def.'s Reply at 3.[11] Rather, the government argues that the settlement payment does not represent a gain from the disposition of any goodwill. *See id.* at 2-3. If the Duffys did not sell or exchange goodwill in consideration for the settlement payment, then the amount received by Mr. Duffy is taxable as ordinary income. *See Schelble*, 130 F.3d at 1394-95; *see also Baker*, 338 F.3d at 794.

The terms of the Settlement Agreement do not evince a disposition or sale of business goodwill.[12] Rather, as discussed *supra*, the payments were for "the exclusive purpose of

---

[11] The fact that Mr. Duffy's consulting business was underperforming, *see* Am. Compl. ¶¶ 73-79, does not necessarily indicate a lack of goodwill, *see Deseret Mgmt. Corp. v. United States*, 112 Fed. Cl. 438, 450 (2013) ("There is undeniably a positive nexus between the existence of goodwill and the ability to generate profit—but that is to say neither that only profitable firms have goodwill, nor, especially, that only firms with profits above the norm possess that asset.").

[12] The administrative complaint filed against UCB, *see* Am. Compl. at Ex. D, and the Duffy's 2007 tax return, *see* Def.'s Mot at Ex. 8, similarly do not reference the disposition of any goodwill associated with a capital asset.

avoiding the expense and inconvenience of further litigation," Settlement Agreement ¶ 8, and Mr. Duffy was "solely responsible for any tax liabilities occasioned by [UCB]'s payment of the consideration for this Agreement," *id.* ¶ 7, *cf. Schelble v. Commissioner*, 71 T.C.M. (CCH) 3166 (T.C. 1996), *aff'd*, 130 F.3d 1388 (10th Cir. 1997) (holding that extended earnings payments were not proceeds from the sale of goodwill since "there was no express sales agreement, nor was there any evidence of vendible business assets."); *Erickson v. Commissioner*, 64 T.C.M. (CCH) 963 (1992), *aff'd*, 1 F.3d 1231 (1st Cir. 1993) (finding that settlement payments did not constitute a sale of capital assets because the record "contain[ed] no express sales agreement, nor [did] it contain evidence of vendible business assets."). As in *Schelble and Erickson*, whatever goodwill or business reputation Mr. Duffy had as a consultant, he retained when he signed the Settlement Agreement. *See Vaaler v. United States*, 454 F.2d 1120, 1123 (8th Cir. 1972). Mr. Duffy may have intended to treat the payment of $50,000 as compensation based on "the damage inflicted on his [consulting] business," Pls.' Sur-reply at 23, but "once having accepted the [Settlement Agreement] in its form, he 'must accept the tax consequences of his choice, whether contemplated or not, . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not,'" *Schelble*, 130 F.3d at 1395 (quoting *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (citations omitted)); *see also* Def.'s Mot. at Ex. 10 (citing Rev. Rul. 74-251, 1974-1 C.B. 234 (1974)).

In sum, the consideration paid by UCB to avoid litigating Mr. Duffy's employment-discrimination and retaliation claims does not represent gain from the sale or exchange of goodwill associated with a capital asset. The settlement proceeds, therefore. may not be taxed as a capital gain.

## CONCLUSION

The government's motion to dismiss under RCFC 12(b)(6) is converted into one for summary judgment under RCFC 56. There are no genuine issues of material fact in this case which preclude summary judgment, and the government's motion for summary judgment is GRANTED. The government is entitled to judgment on the Duffys' tax refund claim. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge